David N. Makous, SBN 82409
dmakous@lhlaw.com
Patrick Lai, State Bar No. 289978
plai@lhlaw.com
LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Telephone: (213) 623-2221
Facsimile: (213) 623-2211

Attorneys for Plaintiff Maritime Documentation Center Corp.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARITIME DOCUMENTATION CENTER CORP., a Montana corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>UNITED STATES COAST GUARD,<br><br>          Defendant. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, Maritime Documentation Center Corp., for their Complaint against the United States Coast Guard, allege as follows:

### NATURE OF ACTION

1.     The Defendant United States Coast Guard ("USCG"), a division of the U.S. Department of Homeland Security, has violated the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), by refusing to produce and improperly redacting

1

personally identifiable information ("PII") in documents responsive to a FOIA request submitted by counsel for the Plaintiff, a copy of which is attached as Exhibit A. This lawsuit requests an order declaring that the USCG has violated the FOIA, and enjoining the agency to immediately provide Plaintiff with the full unredacted information it has requested in their FOIA request.

2.     Plaintiff is in the vessel documentation business, and Defendant is a federal agency responsible for responding to documents requests submitted to it through the FOIA. Plaintiff through its counsel of record Lee Hong Degerman Kang Waimey requested, among other things, the names and addresses (e.g., PII) of commercial and recreational vessel owners via a FOIA request. (See *Exhibit A*). Specifically, Plaintiff requested an unredacted and updated copy of the "Merchant Vessels of the United States" (CG 408) ("Merchant Vessels of the US" or "the report"). The Merchant Vessels of the US is a data file of information that lists the names, vessel information, and ownership information of   merchant and recreational vessels documented under the laws of the United States by National Vessel Documentation Center ("NVDC"). The NVDC is a division of the USCG that is responsible for reviewing and processing applications for federal vessel documentation to ensure compliance with vessel documentation requirements. Plaintiff contends that USCG has improperly withheld and redacted the PII for recreational vessel owners pursuant to the Plaintiff's FOIA request.

3.     The USCG is obligated to periodically publish a list of all documented vessels and information about those vessels. See *46 U.S.C. § 12138(a)*. Plaintiff notes that the PII of commercial and recreational vessels owners has always been available to the public in some form since 1867 until the USCG recently redacted certain PII for recreational vessel owners. Accordingly, Plaintiff estimates that at least 80% of the current recreational vessel owners have no expectation of privacy in their PII because their PII had already been previously disclosed before 2017. Since at least 1876, the United States Department of Transportation or Department

2
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

of Commerce has annually published the PII, including at least the names, of the vessel owners in Merchant Vessels of the United States books.  Since at least 1994, the names and addresses of the vessel owners was distributed via CD-ROM and distributed to the public by the National Technical Information Service.  Since at least 2002, the National Oceanic and Atmospheric Administration (NOAA) Office of Science & Technology had also provided a searchable USCG vessel database query to the public that retrieves vessel dimensions, tonnage, build (if available), and ownership information including PII from data contained in the Merchant Vessels of the US.  The Merchant Vessels of the United States has also been downloadable from the USCG website in various digital data formats.

4.      As of 2017, without any precedent or warning, the USCG suddenly removed certain PII of recreational vessel owners from the Merchant Vessels of the US.  Specifically, the USCG's website on the Merchant Vessels of the US, a copy which is attached as Exhibit B, states:

> On June 12, 2017, the Coast Guard removed certain personally identifiable (PII) from the Merchant Vessels of the U.S. file. . . Effective June 12, 2017, in regards to Vessel Owner information, the following columns have been removed: Person First Name, Person Middle Name, Person Last Name, Person Name Suffix, Address Line 1, Address Line 2, Address Line 3, and Address Line 4.  (*Exhibit B.*)

5.      Accordingly, the NOAA Fisheries FAQ website has stated that the public should file a FOIA request in order to obtain vessel ownership information and that FOIA requests may be submitted by following the instructions at www.uscg.mi/foia.  See *Exhibit C.* To that end, Plaintiff requested records from the USCG via an FOIA request seeking information on PII previously included in data which comprise the report "Merchant Vessels of the US" downloadable from the USCG website (https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-Prevention-Policy-CG-5P/Inspections-Compliance-CG-5PC-/Office-of-Investigations-Casualty-Analysis/Merchant-Vessels-of-the-United-States/), searchable through a USCG vessel database query accessible online via the

3

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

NOAA Fisheries (https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-Prevention-Policy-CG-5P/Inspections-Compliance-CG-5PC-/Office-of-Investigations-Casualty-Analysis/Merchant-Vessels-of-the-United-States/), and through a port state information exchange vessel search accessible online via the USCG Maritime Information Exchange (https://cgmix.uscg.mil/PSIX/PSIXSearch.aspx).

6. In response to Plaintiff's FOIA request, the USCG responded with a CD-ROM containing a redacted copy (i.e. redacting the PII of recreational vessel owners) of the Merchant Vessels of the US and a final response ("Final Response") explaining that the PII of the recreational vessel owners was redacted based on Exemption 6 and 7(c), a copy of which is attached as Exhibit D. Exemption 6 protects disclosure of personnel or medical files which would cause a clearly unwarranted invasion of personal privacy. See *5 U.S.C. § 552(b)(6).* Exemption 7(C) protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. See *5 U.S.C. § 552(b)(7)(C).*

7. On July 6, 2020, Plaintiff promptly appealed the USCG's Final Response decision, a copy of which is produced as Exhibit E. On July 22, 2020, the USCG acknowledged Plaintiff's appeal and assigned Plaintiff's appeal as Case Number 2020-CGAP-00024.   USCG's appeal decision was estimated to be delivered on August 11, 2020.  (See *Exhibit G*). On February 24, 2021, the USCG finally issued a final administrative decision on the same grounds as the Final Response without expanding on the final decision, a copy of which is produced as Exhibit I.

8. Vessel owners are required to comply with registration requirements of the USCG when they purchase or sell a vessel, or when they annually renew the registration of a vessel. The Defendant's violations of law have denied Plaintiff the information to which it is entitled, and both Plaintiff and the general public

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

(including recreational vessel owners, commercial vessel owners, prospective vessel owners, other vessel documentation companies, boat dealers, boat mechanics, marine lenders, maritime vendors and services, marinas, and the like) are injured by the inability to access PII of recreational vessel owners and by the deprivation of information available in government vessel documentation documents to which they are entitled. See *46 U.S.C. § 12105(e)*.

9.     As a non-limiting example, the broad public is harmed by the non-disclosure of PII of recreational boat owners because vessel documentation companies, such as Plaintiff, and the vessel owners themselves cannot submit applications without up-to-date vessel information. This can cause injury in that the applications can be deficient and cause customers to suffer paying extra fees and a delay in obtaining their documentation. This also harms the NVDC because the NVDC is reviewing and processing incorrect applications which will only exacerbate their already large backlog. In addition, the general public is injured because the general public is not able to research current vessel ownership information to efficiently obtain initial vessel registrations for civilian vessels operating on the navigable waters of the United States, to maintain compliance with the legal requirements of vessel documentation by the USCG, and to deter theft and trade in stolen vessels.

## THE PARTIES

10.     Plaintiff Maritime Documentation Center Corp. is a Montana corporation ("MDCC") in good standing and registered to do business in California, with its principal place of business in Chino Hills, California. Since 2017, MDCC has operated through the domain name www.maritimedocumentation.us and provides vessel owners with an online website (or portal) for vessel owners to register, transfer, renew, and check up on the status of various vessel

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

documentations and registrations.  Plaintiff's predecessor company, USVD which shares a common ownership with MDCC, has also been in the same vessel documentation business since 2015.  Plaintiff is a trusted expert in obtaining and maintaining vessel documentation for vessel owners and thousands of vessel owners rely solely on Plaintiff's services to ensure accurate and up-to-date vessel registration.  In 2020 alone, Plaintiff processed over 58,000 vessel documentations for their customers, which is the equivalent of serving at least a quarter of the entire body of registered recreational and commercial owners.  (See *Exhibit J*, at 6 ("In fiscal year 2019, the NVDC documented about 230,000 vessels operating for commercial and recreational purposes in U.S. waters or the exclusive economic zone – an area extending 200 nautical miles out from the U.S. shoreline."))

11.   Defendant, USCG, is a federal agency within the Department of Homeland Security and the NVDC is a branch of the USCG.  Among other things, the USCG (and more particularly, the NVDC) is responsible for:

- reviewing and processing applications for federal vessel documentation to ensure compliance with vessel documentation requirements, including making determinations; (See *Exhibit J*, at 6)
- administrating vessel registrations for all vessels operating on the navigable waters of the United States;
- publishing and disseminating information to promote compliance with vessel construction requirements; (See *Exhibit J*, at 8 and 44)
- documenting and publishing a list of all documented vessels and information about those vessels, including the name and address of the person to whom inquiries regarding the vessel may be made; and
- responding to documents requests submitted to it,

and so is sued as a Defendant in this action.

12.   The Defendant's violations of law have denied Plaintiff the PII information to which it is entitled, and Plaintiff and the members of the public,

6

including, but not limited to, vessel owners, prospective vessel owners, other vessel documentation companies, and the general public are injured by its inability to protect the public, and themselves, and by the deprivation of government information to which they are entitled.  In addition, the general public is damaged by not being able to accurately research current vessel owner information that is necessary for accurately processing the vessel registration and documentation on behalf of their customers.

13.   Plaintiff is unaware of the identities of any other parties involved in making the FOIA decision and reserve the right to amend this Complaint to add them as defendants upon verification.

## JURISDICTION AND VENUE

14.   This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201 and 2202 and 5 U.S.C. § 552(a)(4)(B).

15.   This Court has personal jurisdiction over the Defendant because Defendant has committed tortious acts in this judicial district.

16.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.  Furthermore, venue is also proper in this judicial district pursuant to U.S.C. § 552(a)(4)(B), which provides venue for Freedom of Information Act ("FOIA") cases in this district as the Plaintiff has its principal place of business within this judicial district.

## FACTUAL ALLEGATIONS

17.   Plaintiff is a fee for service private enterprise which assists vessel owners in obtaining and maintaining compliance with the legal requirements of the

7

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

USCG by facilitating vessel registration and, among other things, annually renewing vessel registration for commercial and recreational vessel owners operating on the navigable waters of the United States. These registrations are received, reviewed, and processed by the NVDC, a division of the USCG. The NVDC is also responsible for collecting and compiling the information from these registrations and other vessel documentations.

18.     Vessel documentation is one of the oldest functions of Government, dating back to 1789. Vessel documentation is a national form of vessel registration that provides evidence of nationality for international travel and trade and allows vessels to engage in certain restricted trades such as coastwide trade and the fisheries. Vessel documentation is analogous to the state run Department of Motor Vehicle regulating automobile registration and maintaining a public record of information about vehicle registration, driver licenses, occupational licenses, and more or a county's recorder's or clerk of deed's office tracking deeds recorded against a property since ownership of a piece of land is a matter of public record.

19.     According to federal regulation, to be eligible for documentation, vessels must measure at least 5 net tons (generally vessels longer than 26 feet) and be U.S. citizen-owned. See *46 C.F.R. §§ 67.5, 67.7*. Many owners of recreational vessels choose to federally document their vessels to secure a "preferred mortgage" for financing and to provide them with protections under the U.S. flag when traveling internationally. Securing a preferred mortgage, which provides lenders status to recoup debt in case of default by the vessel owner, requires the vessels be federally documented.

20.     Vessel owners seeking vessel documentation at the federal level must submit an application to the NVDC. There is also a complementary state requirement that specifies the requirements for state registration of vessels. See *33 C.F.R. § 173*. There are also a number of considerations when ensuring that a vessel is fully compliant at both the state and federal level: specific requirements for

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

individual vessels including differences in size, intended use, and location, and for those vessels endorsed for recreational, such use may only be used for that purpose.

21.     NVDC's operations are funded through a combination of user fees and annual appropriations.  The NVDC charges vessel owners user fees to recover the costs for its documentation services for commercial and recreational vessels.  See *31 U.S.C. § 9701*.  The USCG may also use annual appropriations to cover the salary costs of certain NVDC staff who review and process applications for commercial vessels.  In fiscal year 2019, NVDC operations were funded by about $6.5 million in annual appropriations and $11.9 million in user fee collections. (See *Exhibit J*, at 7).

### DEFICIENCIES OF THE NVDC SERVICES

22.     The NVDC's documentation process is incredibly archaic and goes back to the very first Congress of the United States.  The NVDC's actual registration website is laden with archaic and inefficient and inaccurate practices.  The NVDC documentation process was designed entirely with the government authorities in mind and not with any consideration to the convenience, needs, and interests of the private vessel owners.

23.     The USCG has conducted no operational analyses of its vessel documentation system (VDS) since 2012. (See *Exhibit J*, at 2).  In addition, the USCG has never measured the NVDC's effectiveness in processing vessel documentation. (See *Exhibit J*, at 2).  The NVDC uses an informal target to measure staff timeliness in processing documentation, but it has not established formal targets to measure its overall performance.

24.     As an initial matter, the NVDC applications and forms are grandly confusing and replete with maritime jargon.  Upon receipt of the application, the NVDC reviews them and will reject them for many reasons.  If a recreational vessel

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

owner is unfamiliar with these applications or terms, they would most likely receive a deficiency notice from the NVDC, rejecting their application. The following is a non-exhaustive list of reasons for deficiency notices, some of which are avoidable if handled by a competent agent, such as:

- a misspelled vessel name or owner name,
- an incorrect official number;
- an incorrect hull identification number,
- an incorrect or misspelled hailing port,
- inputting an incorrect trade endorsement,
- an incorrect official number, or
- an incorrect corporate ownership information.

25.    The NVDC has faced long standing challenges in addressing backlogs for processing applications for vessel documentation. In September 2017, the United States Government Accountability Office ("GAO") conducted an audit and review of the NVDC, a copy of which is attached as Exhibit J. In the 2017 GAO report, the GAO said that from 2011 to 2017, owners of recreational vessels had to wait up to four months to obtain recreational vessel documentation because of NVDC delays in processing the applications. See GAO, *Coast Guard: Workforce Actions Under Way to Address Backlog in Recreational Vessel Documentation*, GAO-17-629 (Washington, DC.: Sept. 12, 2017). At the time, NVDC officials attributed the backlog to staffing challenges, such as understaffing and a suboptimal mix of commercial and recreational documentation officers to review vessel documentation applications and issue documentation.

26.    Additionally, it has always been very difficult to contact the NVDC to get help with any application. Recently, due to the current COVID-19 pandemic, the NVDC has also suspended walk-in customer service until further notice. (See *Exhibit M*). The NVDC officers are rude and dismissive, and are not willing to take the time to help the public with their application. The NVDC has very limited hours

of operation.  For example, the NVDC's phone hours are limited to 9:00 AM EST to 3:00 PM EST on Monday, Tuesday, Wednesday, and Friday.  The phones are not manned on Thursdays.  As such, the only realistic option for the public to contact an NVDC officer with questions is via email, which creates an email chain that often goes back and forth for days.  Even when a customer is in contact with a NVDC officer, the NVDC officers are not well-trained and give conflicting advice on the requirements of an application and how to submit an application.  For example, an application for initial documentation that is submitted today would only be looked at and reviewed in roughly three months from the date of submission.  If the application is considered to contain a deficiency, then this adds another 90 day of delay for the customer to respond and to complete the process.

27.     Furthermore, the NVDC applications and forms are not electronic or digital and very difficult to find. This means that a customer must manually download the applications, fill them out, and e-mail or mail the applications.  The USCG NVDC states that they will accept application packages and documents eligible for filing by email or fax.  However, as of the filing of this complaint, the NVDC website has stated in contradictory fashion that "**[I]ncoming facsimile (fax) services (to the National Vessel Documentation Center) are currently not operational.**  Customers attempting to send faxes will note the system does not connect (constant ringing)", a copy of which is attached as Exhibit K. (emphasis added).  This all results in an inept governmental agency creating additional and unnecessary challenge to the public with this inefficient process.

## GAO'S DECEMBER 2020 REPORT TO CONGRESSIONAL COMMITTEES

28.     In December 2020, the GAO published a report titled "Actions Needed to Improve National Vessel Documentation Center Operations," ("the report") a copy of which is attached as Exhibit J.  The report examined, among other

11

objectives, whether the USCG met its NVDC workload demands and measured NVDC's effectiveness in processing vessel documentation by "analyz[ing] data from the NVDC's weekly case processing reports for fiscal years 2015 through 2019, which included the NVDC's time frames for processing recreational certificates of documentation." (See *Exhibit J*, at 8). Specifically, the GAO report focused on applications for commercial and recreational initial and reissue certificates of documentation, abstracts of title, and letters of determination because those were the primary types of vessel documentation that the NVDC processes. In addition, the GAO also reviewed the USCG documentation on its process for documenting vessels and address its vessel documentation backlog, and interviewed USCG management officials, regarding the processing of vessel documentation for commercial and recreational vessels.

## NVDC HAS NOT PROCESSED RECREATIONAL DOCUMENTATION WORKLOAD WITHIN EXPECTED TIME FRAMES

29.     The GAO report found that the NVDC met workload demands for timely processing of commercial vessel documentation, **but not for recreational vessel documentation**. (See *Exhibit J*, at 8). From January 2015 through September 2019, the NVDC's recreational documentation processing time averaged 57 days – about 4 times longer than its 15-day informal target. (See *Exhibit J*, at 8). This processing time has also undoubtedly been exacerbated by the limited services and restrictions due to the current COVID-19 pandemic.

30.     The NVDC official attributed the current backlogs to performance issue with the USCG's information technology system for managing vessel documentation. For example, officials stated that there were periods where system performance issues left only about 11 percent of NVDC staff able to access the system, limiting their ability to meet their workload demands. (See *Exhibit J* at 2).

31.     In September 2017, the GAO reported that for several years the NVDC had faced challenges meeting its workload on a timely basis. Specifically, the GAO found that the NVDC experienced a backlog for processing applications for certificates as long as 4 months for processing applications for recreational certificates from fiscal years 2007 to 2017.  (See *Exhibit J*, at 2)  During this time, the range of time applications stayed in NVDC's queue increased from about 3 to 48 business days in fiscal years 2007 to about 40 to 80 business days in fiscal year 2017. (See *Exhibit J*, at 14).

32.     During fiscal years 2015 through 2019, the NVDC met some of its workload demands by processing commercial certificates within expected time frames.   However, for recreational certificates, the NVDC's processing times continued to reflect backlogs. For example, during this time, NVDC's recreational case processing time ranged from 30 to 90 business days, with an average of 57 business days. (See *Exhibit J*, at 15).  Furthermore, USCG attributed the backlogs in large part to persistent performance issues the NVDC experienced with its case management system.

33.     The NVDC processed over one million certificates from fiscal years 2015 through 2019.   According to the GAO's analysis, recreational vessels comprised 70 percent (e.g., 806,366 out of 1.15 million) of the NVDC's workload for processing certificates during this time frame. (See *Exhibit J*, at 10).  The NVDC did not meet its informal timeliness timelines for processing recreational certificates.

34.     From fiscal years 2015 through 2019, the NVDC faced a backlog in processing initial and reissue recreational certificates.  NVDC management officials told the GAO that the NVDC aims to review applications for recreational initial and reissue certificates within 15 business days from the date of receipt from vessel owners.  However, the GAO found that the NVDC did not meet this time frame at any point during fiscal years 2015 through 2019.   Specifically, the NVDC's

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

recreational case processing time ranged from 30 to 90 business days, with an average of 57 business days – nearly four times longer than what the NVDC management officials told GAO. (See *Exhibit J*, at 12).

35.     In addition, the NVDC also faced a considerable backlog for processing abstracts of title.  According to NVDC management officials, the NVDC aims to process abstracts of title within 2 to 3 business days.  However, the GAO found that in fiscal year 2019, the average case processing time was about 10 business days. (See *Exhibit J*, at 12). The backlog for both processing initial and reissue recreational certificates and abstracts of title has only grown due to the current COVID pandemic.

### NVDC HAS NOT DEVELOPED ORGANIZATIONAL-LEVEL MEASURES OF EFFECTIVENESS OR FORMALLY COLLECTED CUSTOMER SERVICE FEEDBACK

36.     In addition, the NVDC has not established measures of effectiveness to routinely convey program performance to USCG leadership.  These measures of effectiveness include those related to NVDC's timeliness in processing vessel documentation and accuracy of its results.  For example, NVDC management officials told GAO that they had an informal target for timeliness of 15 days for processing recreational certificates, but had not documented it.  (See *Exhibit J*, at 20).  Moreover, the NVDC does not have an organizational performance measure for accuracy, though it evaluates its documentation officers against this competency.   NVDC management officials have told GAO that "they were concerned that setting formal organizational timeliness targets they cannot meet may expose NVDC to legal liability if parties rely on the  goals for maritime transactions and financing." (*Exhibit J*, at 26).  The NVDC has plainly experienced challenges related to both staffing and information technology infrastructure for several years.

37.     The NVDC receives informal customer feedback, but does not have a

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

formal mechanism to solicit and review customer service feedback. Executive orders require agencies to establish mechanisms to solicit customer feedback on government services and use such feedback regularly to make service improvements. NVDC has never formally solicited or collected customer service feedback. In addition, the GAO report interviewed officials from 11 maritime industry groups, and officials from nine groups provided both positive and negative feedback on aspects of the NVDC's operations. (See *Exhibit J*, at 28). Specifically, "official from five groups stated that they were concerned about the recreational vessel documentation backlog, citing negative effects on vessel owners, the marine market research industry, and marine lending industry." (*Exhibit J*, at 28). In addition, "one group told us [GAO] that the NVDC's services did not meet customer expectations for efficiency or transparency." (*Exhibit J*, at 28).

## MDCC SERVICES

38.     Accordingly, it is up to vessel documentation companies, such as MDCC, who facilitate and advise vessel owners about obtaining and renewing registrations to avoid invalid registrations, compliance with legal requirements, unnecessary delay, and extra fees. Plaintiff offers considerable experience and expertise in answering questions about the entire vessel documentation process, with thousands of satisfied customers who rely on their services for registration and renewal.

39.     Plaintiff's services include trained documentation processors that advise vessel owners on how the documentation process works, what documents they need, and also checking the customer's input on the vessel documentation and applications. Plaintiff's documentation processors find that approximately 80% of their customers' initial vessel documentation applications contain some sort of error or omission.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

40.     Plaintiff's business allows vessel owners to fill out forms that are conveniently available to complete online through the Plaintiff's online website. There are a variety of different forms that vessel owners will need depending on their specific needs and situations.  Plaintiff has conveniently listed almost every form a vessel owner could need throughout the course of their vessel ownership. Plaintiff's website is user friendly and also mobile-optimized to allow vessel owners to fill out forms in a piecewise manner (e.g., the vessel owner does not need to complete the application in one sitting).  This allows vessel owners the freedom to fill out the forms whenever it is convenient.

41.     Specifically, the various services offered by MDCC allow vessel owners to:

- renew a vessel's Certificate of Documentation ("Certificates");
- change the physical or mailing address on record;
- receive an abstract of title for a vessel documented under the USCG Documentation;
- apply for initial USCG documentation;
- make a change/transfer in the vessel's ownership;
- reinstate the vessel's Certificates;
- order a Certified copy of the current vessel's Certificates;
- order a replacement of the Certificates;
- apply for vessel's deletion from the USCG Documentation;
- apply for a change of the vessel's name and/or hailing port;
- apply for a change to the vessel's endorsement(s) and/or trade indicator;
- apply for a satisfaction of mortgage;
- apply for a preferred ship mortgage;
- apply for a recording of a claim of lien against a vessel that is under the USCG Documentation;

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

- apply for a Department of Transportation's Maritime Administration (MARAD) small vessel waiver; and
- search or request a foreign vessel title.

42.   After completing the easy-to-understand forms, the forms are forwarded to MDCC's documentation processors for review and submission to the NVDC.  On average, most people who attempt to submit their own documents yield errors which cause their documentation process to be delayed by months and are also subject to forfeiting their fees.  Plaintiff's services provided through its website help speed up the documentation process, eliminate mistakes, and updates vessel owners on registration status.   Plaintiff also offers a service where the documentation processor will walk vessel owners through the various application processes.

43.   Because of Plaintiff's assistance the NVDC is spared many more hours of additional work by avoiding countless applications and vessel documentation with deficiencies.  Applications and vessel documentation with deficiencies only further delay the application process and further add to the NVDC's already massive backlog.  In addition, Plaintiff's documentation processors help alleviate the strain on the admittedly limited NVDC staff because vessel owners can ask questions to the documentation processors rather than ask questions to the NVDC staff. All of this advances the NVDC's mission of providing an up-to-date and accurate register of vessels available in time of war or emergency to defend and protect the United States.

**CERTIFICATES**

44.   The NVDC categorizes applications for certificates as initial, renewal, or reissue, among other categories.   These three represent the majority of documentation applications, but other categories include a replacement certificate

17

and duplicate certificate. The NVDC processes applications for an initial certificate the first time a vessel owner documents a vessel, and applications for a renewal certificate when a vessel owner renews a certificate.  Notably, commercial vessels must renew their vessels annually, and recreational vessel owners may renew their vessels every 1 to 5 years. The NVDC estimates that they process and issue about 230,000 certificates yearly for commercial and recreational vessels.  The NVDC processes applications for a reissue certificate when a vessel's ownership changes or a vessel owner changes the vessel's hailing port. The NVDC also endorses certificates for vessel owners to engage in certain activities, such as commercial, recreational, and the fisheries.  As mentioned above, Plaintiff processed roughly 58,000 certificates last year.

45.    One of Plaintiff's primary functions is to help vessel owners obtain initial vessel registrations for vessels through the process describe above.  Plaintiff also provides forms that are readily available and easy to understand so that vessel owners simply need to provide information about themselves to the Plaintiff. As explained in detail above, Plaintiff screens vessel registration applications for errors, files the application with the NVDC, and also follows through with the NVDC until the proper vessel registrations are issued.   Plaintiff's document processors also will walk vessel owners through the entire process to ensure that the forms are correctly filled out without any omissions or errors.

## REGISTRATION RENEWAL

46.    A Certificate is generally valid for one year from the date of issue, provided there are no changes to vessel ownership other than a change of owner's address.  Federal law has allowed recreational vessels owners the option to select a multi-year renewal starting in January 2019, and requires a 5-year renewals starting in January 2022, which has altered NVDC's processing of these renewals.  See *46*

*C.F.R. 67.163*. The USCG has stated that "it is up to the owner to assure the document does not expire, the Coast Guard will send a Notice of Renewal to the managing owner approximately 45 days prior to expiration." (See *Exhibit Q*, at 7). Expired registrations can often result in large monetary penalties and force the docking of vessels.  As such, it is paramount that vessel owners regularly check their registration for its expiration date to avoid the possibility of sailing with no valid documentation.

47.    In addition, vessel owners may renew their documents early "as a courtesy to owners unable to respond to renewal notification during the schedule expiration month" to renew early. However, due to automated processing, submissions received more than 60 days prior to expiration will be issued with a new issue/expiration date, changing the vessel's month of expiration and shortening the validity period of the current document." (*Exhibit Q*, at 7).  This means that the window for Certification renewal to maintain the same expiration month is only 60 days from expiration.  In addition, application fees are not pro-rated and non-refundable.

48.    Plaintiff was the original pioneer that offered the vessel owners an exclusive service to allow vessel owners to renew their documentation for up to five years in advance.  This helped vessel owners save time and minimize error and a violation of the regulations by allowing Plaintiff to renew vessel documentation for the vessel owners for up to five years in advance. In fact, once the NVDC became aware of Plaintiff's innovative practices it also adopted this 5 year renewal practice (See *46 C.F.R. 67.163(c)*)  in January 2019.

49.    If Plaintiff has access to the PII of vessel owners then Plaintiff can remind vessel owners when their vessel documentation is expiring and to help easily renew their registrations, a copy of which is attached as Exhibit L.  Furthermore, vessel owners can only renew their registration for up to sixty days before expiration and up to thirty days after expiration.  If thirty days have passed, then vessel owners

19

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

will be forced to go through a different and more difficult process.

50.    The NVDC does not provide a renewal effective date as of the expiration date of the current registration, but rather makes it effective on the renewal filing date.  If a vessel owner renews before sixty days prior to the expiry date, then the vessel owner is damaged by forfeiting the remaining balance of time on the current registration. However, unlike the NVDC, Plaintiff's renewal service allows vessel owners the option of submitting a renewal application to the Plaintiff early in order to ensure that their vessel documentation is always up to date and, more importantly, to maximize the validity period of the current document.

51.    In addition, the NVDC system cannot automate the processing of multi-year renewal certificates for recreational vessels. Specifically, a December 2018 Coast Guard bulletin stated that a VDS upgrade  was required to automate the processing of multi-year renewals.  (See *Exhibit J*, at 34).  In August 2020, the USCG stated it plans to begin making the update by March 2021, but all the while NVDC officials must process multi-year renewals manually. (See *Exhibit J*, at 35).

## TRANSFER/EXCHANGE OF REGISTRATION

52.    A vessel owner's vessel documentation must always stay current to stay in compliance.  For example, certain life changes for vessel owners such as adding ownership to a vessel, relinquishing ownership to a vessel, or moving a vessel to a new hailing port will require vessel owners to update their vessel documentation.

53.    Another one of Plaintiff's functions is to help ensure that vessel owners have the most updated vessel documentation to stay in compliance.  This service furthers the NVDC's mission of providing the most up-to-date and accurate register of vessels and ensure that vessel owners are in compliance with vessel documentation requirements.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1
2

## ABSTRACTS OF TITLE

3
4
5
6
7
8
9
10
11
12
13
14

54.    The NVDC's vessel documentation responsibilities also include providing abstracts of title, upon request, to lenders or other interested parties. Vessel transactions cannot be completed without a clear abstract of title.   For example, marine lenders require potential vessel owners to obtain abstracts of title from the NVDC prior to finalizing a boat loan.  In turn, the marine lenders use the abstract of title to determine whether a boat has an outstanding lien.  An abstract of title shows all bills of sale, mortgages, and notices of claim of lien the NVDC files and records for a documented vessel.  The NVDC maintains this vessel ownership information, including owner names, mortgages, and claims of lien, on file for each documented vessel in its vessel documentation system.  According to NVDC data, the NVDC issued about 96,000 abstracts of title in fiscal year 2019. (See *Exhibit J*, at 12).

15
16
17
18
19
20
21
22
23
24

55.    Accordingly, disclosure of the unredacted vessel owner information is crucial in regard to a Bill of Sale.  A Bill of Sale cannot be filled out correctly without looking up accurate ownership information. Without access to the PII of recreational vessel owners, a current vessel owner may be submitting vessel documentation on their own without remembering exactly what information they had previously provided to the NVDC.   Even a slight difference between information that the customer submits in their Bill of Sale and the current vessel ownership information registered with the NVDC will result in a deficiency. This will result in a delay of the application being fully processed for up to 90 days and extra processing fees.

25
26

## REGISTRATION REPLACEMENT

27
28

56.    The USCG requires that vessel owners have a physical copy of their

21

vessel documentation at all times in order to be in compliance.  Having a picture of your vessel documentation is not valid. The vessel's documentation must be shown to state law enforcement personnel upon their demand.  If a Certificate is lost or mutilated then the vessel owners will need to file an application for replacement (CG-1258) along with a $50.00 fee.  Vessel owners may be fined or even impeded from travel without a valid certificate to back up the documentation numbers displayed on a boat.

57.     Plaintiff also allows vessel owners to easily replace physical copies of their vessel registration.  For example, if the physical copy becomes mutilated or destroyed, then the vessel owners will need to receive another physical copies of their vessel registration.  Plaintiff offers vessel owners a simple and easy way to obtain replacements for their vessel documentation.

### MERCHANT VESSELS OF THE UNITED STATES

58.     The NOAA is an American scientific agency within the United States Department of Commerce that focuses on the conditions of the oceans, waterways, and the atmosphere.  For at least the last two decades, the NOAA has provided an unredacted report "Merchant Vessels of the US" (CG 408) also known as the "List of Documented Vessels" to anyone who requested it in various forms (e.g., books, CD-ROMs, online database, etc.).  The report lists all of the registered merchant and recreational vessels the United States, including all corresponding vessel and vessel ownership information.

59.     Specifically, the report is a data file of PII of merchant and recreational vessel documented under the laws of the United States by the USCG.  The source of the data file is the USCG's Marine Information for Safety and Law Enforcement (MISLE) and VDS database, a comprehensive system serving many Coast Guard Marine safety units, including the NVDC.  The data file consists of vessel

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

particulars and managing owner identification information for vessels having a valid Certification of Documentation. For each vessel having a valid Certificate of Documentation, the data file consists of vessel particulars and managing owner identification information, such as:

- vessel name with official number, managing owner name with complete mailing address (e.g., PII),
- tonnage and length, home port, and
- authorized trade endorsements, hailing port, manufacturer identification and hull identification numbers.

60. Only until very recently, the report had previously listed all PII information included in the data of the report. Historically, as far back as 1867 and until at least 1994, the United States government has also published annual reports of the Merchant Vessels of the United States, which included the same unredacted PII data that was previously provided in the report database. From 1994 to 2018, the Merchant Vessels of the United States data file was available for purchase by the public via a CD-ROM as a single issue or an ongoing subscription. (See *Exhibit F*). More recently, the USCG has provided an unredacted report available for download in an electronic format at the United States Coast Guard website (https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-Prevention-Policy-CG-5P/Inspections-Compliance-CG-5PC-/Office-of-Investigations-Casualty-Analysis/Merchant-Vessels-of-the-United-States/) until 2017.

61. However, as of June 12, 2017, the USCG has removed certain PII from the report "Merchant Vessels of the United States." Sometime in the recent past, the NOAA's website started posting the following notice:

> In accordance with 5 U.S.C. § 552a, the Coast Guard may not publicly disclose PII via publication of the Merchant Vessels of the U.S. unless a request for the information is listed as a routine use under the Marine

23

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Information for Safety and Law Enforcement (MISLE) System of Records or the Homeport System of Records. (*Exhibit B*, at 1-2)

62.    The    USCG    website    (https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-Prevention-Policy-CG-5P/Inspections-Compliance-CG-5PC-/Office-of-Investigations-Casualty-Analysis/Merchant-Vessels-of-the-United-States/) re: the Merchant Vessels of the United States also states: "New Modification:  Effective June 12, 2017, in regards to Vessel Owner information, the following columns have been removed:  Person First Name, Person Middle Name, Person Last Name, Person Name Suffix, Address Line 1, Address Line 2, Address Line 3, and Address Line 4."  Plaintiff seeks this particular information in their FOIA request.

63.    Until at least June 2017, the USCG vessel query database was also updated and revised on a quarterly basis by the NOAA Fisheries by compiling the data directly from the USCG's Merchant Vessels of the United States, a copy of which is attached as Exhibit P.  However, the current version of the NOAA Fisheries query database[1] states that:

> The United States Coast Guard has ceased providing Personal Identifying Information (PII) previously included in the data which comprise the report "Merchant Vessels of the United States" also known as the "List of Documented Vessels." That report's data is the content for NOAA's searchable database accessible on this webpage. All questions regarding the availability of PII data must be addressed to efoia@uscg.mil or the following address: COMMANDANT (CG-611)
>
> ATTN FOIA OFFICER
> US COAST GUARD STOP 7710
> 2703 MARTIN LUTHER KING JR AVE SE
> WASHINGTON DC 20593-7710.  (*Exhibit H*)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

64.   Per Title 46 U.S. Code §12138(a), the USCG is obligated to "publish **periodically a list of all documented vessels and information about those vessels** that the Secretary considers pertinent or useful." (emphasis added) See *46 U.S.C. § 12138*.

## FOIA REQUEST SEEKING PII

65.   The USCG has stated that any request:
for any other associated documents or data would require a Freedom of Information Act (FOIA) request.  FOIA requests may be submitted by following the instructions at www.uscg.mil/foia.  Please note that personally identifiable information may not be disclosed if it meets any of the exemptions established under FOIA.   The public may continue to access the Merchant Vessels of the U.S. at the link below and may also access vessel information via the U.S. Coast Guard Port State Information Exchange at   https://cgmix.uscg.mil/PSIX/.   Numbering and titling, Registration, and Law Enforcement Personnel of state and federal agencies are directed to the Coast Guard's Vessel Identification System                                                         (VIS) at: https://cgmix.uscg.mil/VISInformation.aspx?VISOption=Access.
(*Exhibit B*, at 2)

66.   On April 13, 2020, Plaintiff sent an initial FOIA request to request electronic copies of personally identifiable information (PII) from the Report under the FOIA ACT, 5 U.S.C. §552. (See *Exhibit A*).    Specifically, Plaintiff requested the report's data which includes vessel particulars and managing vessel owner identification information such as: (1) organization name, (2) owner's first and last name, (3) address, (4) certification of documentation status, (5) certificate of documentation issue date, (6) certification of documentation expiration date, etc. This requested PII information had been redacted in different electronic formats in the Merchant Vessels of the United States since the first US Merchant Vessels of the United States was compiled and printed in 1867.

67.   On June 23, 2020, the USCG responded to the FOIA request by

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

sending Plaintiff a CD-ROM with redacted data responsive to the FOIA request and the Final Response letter. (See *Exhibit D*).  The USCG redacted data pertaining to the PII of recreational vessel owners.  **However, it is noteworthy that the USCG produced all other data including the PII of vessels owned by corporations and family trusts.**

68.   The Final Response request partially denied Plaintiff's FOIA request pursuant to FOIA Exemptions 6 and 7(C) to Plaintiff.  (See *Exhibit D).* The USCG searched the MISLE database for documents responsive to Plaintiff's request and produced a total of 374,713 rows of data containing the Merchant Vessels of the United States Data file. Of those data rows, the USCG determined that 76,520 rows or data are releasable in their entirely, 289,193 rows of data are partially releasable, and 0 pages are withheld in their entirety and pursuant to Title 5 U.S.C. § 552(b)(6) and (b)(7)(C).  In summary, the USCG withheld 374,713 rows of data based on Exemption 6 and Exemption 7(c).

69.   Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" *5 U.S.C. § 552(b)(6).*  Exemption 6 requires a balancing of the public's right to disclosure against the individual's right of privacy. The Final Response alleged that "[t]he privacy interests of the individuals in the records requested by Plaintiff outweigh any minimal public interest in disclosure of the information." (*Exhibit D*, at 1).

70.   Exemption 7(C) protects records or information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *5 U.S.C. § 552(b)(7)(C).* This exemption takes particular note of the strong interest of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity to avoid stigmatizing, embarrassing, or harming the individual. The Final Response also alleged that "the privacy interest in the

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure into this determination." (*Exhibit D*, at 1).

71.     On July 2, 2020, Plaintiff appealed the USCG's decision to withhold the requested information.   (See *Exhibit E*).   On July 22, 2020, the USCG acknowledged receipt of Plaintiff's FOIA appeal to the USCG on July 9, 2020 and assigned Plaintiff's appeal to Case Number 2020-CGAP-00024.   (See *Exhibit G*). The primary contact for Plaintiff's appeal was Ms. Amanda Ackerson, a FOIA Public Liaison for the USCG.

72.     The Department of Homeland Security provides a "Check Status of Request" website (https://www.dhs.gov/foia-status) that listed the estimated delivery date of the appeal decision to be August 11, 2020.  (See *Exhibit G*).     In addition, the DHS website ((https://www.dhs.gov/foia-status) also lists states: "DHS Requests Response Time for Processed and Pending Requests - Average No. of Days Simple is 21.24 Days and Complex is 111.59 Days. For component specific response times, please refer to the latest FOIA annual report."

73.     For a period of over 240 days - between July 22, 2020 and February 24, 2021- Plaintiff through its attorney, Patrick Lai, requested a status update from the USCG via bi-weekly emails and phone calls to Ms. Amanda Ackerson.  Ms. Amanda Ackerson only responded to a few of those emails.  In addition, Ms. Amanda Ackerson never picked up her telephone and her voice message box was full such that counsel for Plaintiff could not leave a message.

74.     On February 24, 2021, the USCG finally issued a final administrative decision partially denying the responsive records pursuant to FOIA Exemptions 6 and 7(C) ("Final Administrative Decision"), a copy of which is attached as Exhibit I.  The Final Administrative Decision did not expand on the Final Response. Specifically, the Final Administrative Decision stated that "[t]he general public interest in determining the identities of person(s) mentioned in the investigation is negligible.  On balance, the demonstrable privacy interests of those involved in the

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

investigation clearly outweigh any general public (sp?)" (*Exhibit I*, at 2).

75.    Exemptions 6 and 7(C) both exempt the release of records which constitute "an unwarranted invasion of personally privacy" (*5. U.S.C. §§ 552(b)(6), (b)(7)(C)*) and require the court to balance the individual's privacy interest against the public's interest in disclosure. See *Council on Am.-Islamic Relations, Cal. v. FBI*, 749 F. Supp. 2d 1104, 1117 (S.D. Cal. 2010)  Plaintiff contends that the USCG improperly applied Exemptions 6 and 7(C) to protect the privacy interest in the names or identifying information of recreational vessel owners.

### THE USCG IMPROPERLY INVOKED EXEMPTION 6 TO JUSTIFY ITS REDACTIONS

76.    Exemption 6 protects the privacy interest of individuals contained in personnel, medical, and similar files in general.  When evaluating an invocation of Exemption 6, the court first must determine whether the requested records are personnel, medical, or similar files.  It does not seem likely that the files are "personnel files" as this relates to agency employees or military or private employment employee's files, and they are clearly not "medical files', and they do not appear to be similar to either of these.  In any event  the court must determine whether disclosure of the PII "would constitute a clearly unwarranted invasion of personal privacy by engag[ing] in a two-step inquiry.  First, the court asks, "whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest," because '[i]f no significant privacy interest is implicated. . . FOIA demands disclosure." *Multi Ag Media LLC v. Dep't of Agric.,* 515 F.3d 1224, 1229 (quoting Nat'l Ass'n of Retired Fed. Employees v. Horner (NARFE), 879 F. 2d 873, 874 (D.C. Cir. 1989).  If a substantial privacy interest exists, then "the court applies a balancing test that weighs the privacy interest in withholding the record against the public's interest in the record's disclosure." *Judicial Watch v. U.S. Dep't of State*, 875 F. Supp. 2d, 37, 45 (D.D.C. 2012).    Furthermore, Exemption 6

"instructs the court to tilt the balance in favor of disclosure." *See Nat'l Ass'n of Home Builders v. Norton*, 309 F. 3d 26, 32 (D.C. Cir. 2002) ("[U]nder Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the [FOIA]" (quoting *Wash. Post Co. v. U.S. Dep't of Health and Human Servc.*, 690 F.2d 252, 261, 223 U.S. App. D.C. 139 (D.C. Cir. 1982)).

77.   The USCG contends that "[i]n this case, release of the subject personally identifiable information would, of itself, directly reveal little or nothing of interest to the general public regarding the USCG's mission performance.  On balance, the demonstrable privacy interests of those involved in the investigation clearly outweigh any general public interest." (*Exhibit J*, at 1). For the following reasons listed below, Plaintiff disagrees with the USCG's legal analysis and application.

**STEP 1: RECREATIONAL VESSEL OWNERS HAVE NO PRIVACY INTERESTS**

78.   There are no privacy interests in the PII of recreational vessel owners because the names and addresses of the recreational vessel owners constitute commercial information.  At least one district court has recognized that "the disclosure of names and addresses it not inherently and always a significant threat to the privacy of those listed[,]" and "whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Nat'l Ass'n of Retired Fed. Emps. v. Homer*, 279 U.S. App. D.C., 879 F.2d 873, 877 (1989).  Here, the recreational vessel owners would merely be identified as having registered a vessel with the NVDC, or owning a vessel.  There is nothing at issue that would be stigmatizing, embarrassing or dangerous if the PII of recreational vessel owners was revealed, as it has been for decades.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

79. In addition, recreational vessel owners have no expectation of privacy regarding their PII because the recreational vessel owners were never expressly or impliedly promised confidentiality or privacy when submitting their names and address (e.g., PII) to the NVDC for use in a business process (e.g., vessel registration, application for inspection, etc.). Moreover, as explained in detail above, the PII were historically published and routinely available to any member of the public since the late 1800s until very recently. As such, the PII of any recreational vessel owners who registered with the NVDC prior to 2017 has already been released to the public so there can be no expectation of privacy for any recreational vessel owners prior to 2017. Additionally, corporations and family trusts and recreational vessel owners all fill out the same vessel documentation forms and applications and the names and addresses of vessels owned by corporations and family trusts are not redacted, which contain many names and addresses of persons (e.g. The Bill Smith Family Trust).

80. Finally, the USCG has also released the PII to other organizations and databases - without any restraint or restrictions - including at least the Lloyds Register, State Boat Registration systems/database, Maritime Mobile Service Identity (MMSI) database, EQUASIS, Merchant Mariner Licensing and Documentation system, and Direct Access.

## STEP 2: THE PUBLIC INTEREST IN DISCLOSURE OF PII OUTWEIGHS THE NON-EXISTENT OR DE MINIMIS PRIVACY CONCERN

81. Even if any privacy interest in the PII of recreational owners exists, then the court applies a balancing test that weighs the privacy interest in withholding the record against the public's interest in the record's disclosure.

82. As an initial matter, disclosure of the PII of recreational vessel owners is related to the core purpose of the FOIA because it sheds additional light on the NVDC's operations by allowing vessel documentation companies and others in the

30

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

maritime industry, including vessel owners  to research PII to help them correctly and efficiently effectuate the registration renew maintain and transfer vessels with proper vessel documentation.  As mentioned in detail above, the NVDC is responsible for reviewing and processing applications for federal vessel documentation to ensure compliance with vessel documentation requirements. Specifically, the NVDC serves the "unique function as the entity responsible for federally documenting commercial and recreational vessels – annually processing hundreds of thousands of applications for vessel documentation." (*Exhibit J*, at 36). Accordingly, disclosure of PII of recreational vessel owners furthers the NVDC's goal and the publics' interest in timely and accurately reviewing and processing applications for federal vessel documentation, ensuring compliance with vessel documentation requirements, tracking vessel information accurately, and maintaining correct and accurate vessel documentation in the Merchant Vessels of the US.

83.    The disclosure of PII is also related to the NVDC's performance of its statutory duties since vessel documentation is a public process.  The two primary functions of the NVDC are to review and process applications for federal vessel documentation to ensure compliance with vessel documentation requirements and publish a list of all documented vessels and information about those vessels, including the name and address of the person to whom inquiries regarding the vessel may be made.   Accordingly, the disclosure of the PII to the public is related to the NVDC's performance of these statutory duties because disclosure of PII enables vessel research through access to the fully unredacted information via various databases.   This allows the public and documentation companies to help commercial and recreational vessels fill out correct and accurate vessel documentation forms, which will make the NVDC's review process more efficient and help alleviate the massive backlog.  In addition, recreational owners can use the documentation companies to prepare, advise and answer questions about filling out

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

the forms, which works to everyone's advantage.  Furthermore, releasing the PII to the general public will help  deter theft and trade in stolen vessels by allowing the general public and maritime services and vendors to verify vessel ownership information.

84.    Finally, the USCG's disclosure of the PII of recreational vessel owners serve the public interest because there is a clear relationship between disclosure of PII for recreational vessel owners and the general public's interest to monitor and more efficiently facilitate vessel registration with the NVDC.  The general public served by disclosure of the vessel owners consists of at least the following types of entities:

- Recreational vessel owners;
- Commercial vessel owners;
- Prospective vessel owners;
- Vessel documentation companies; (See *Exhibit N*)
- Boat dealers, appraisers & surveyors, brokerage yacht sales, pre-owned boat listings, boat retailers; (See *Exhibit O*)
- Boat mechanics, boat technicians, shipyards & repair services, towing & repair services, yacht maintenance & crew services;
- Banking and finance companies including marine lenders, loan origination companies, finance companies, insurance companies [a list of at least 100 companies in this industry is listed at https://www.marinelenders.org/resources-for-boat-buyers/find-boat-loans];
- Maritime vendors and services, including charter operators, fishing tournament organizers, fractional boat ownership companies, marina publications, boat owner associations, web-based marine businesses,
- Maritime attorneys;
- Marina operators, Yacht clubs, fishing/sport clubs; and

32

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

- Maritime historians;

85.    Even the NOAA Fisheries, Office of Science and Technology website, has stated that the names and addresses of vessel owners "would be appropriate for inclusion on an Internet site. There are a number of reasons for publishing the name and address of vessel owners. Those reasons include:

- Documentation is a public process;
- To make it more difficult for ineligible persons to document vessels (i.e., someone who does not meet U.S. citizenship requirements)
- To deter theft and trade in stolen vessels." (*Exhibit F*, at 1).

86.    Vessel owners and various types of entities, which are listed above, would benefit from having access to the unredacted version of the Merchants Vessel of the US:

- commercial, recreational, prospective vessel owners, and maritime historians may use the unredacted version of the Merchants Vessel of the US database to properly research vessel ownership information.
- boat dealers, boat mechanics, banking and finance companies, maritime vendor vendors and services, and marina operators can also use the unredacted version of the Merchants Vessel of the US database as a source of managing owner information and by State offices for tax and other legal purposes.
- vessel documentation companies such as the plaintiff can use the unredacted version of the Merchants Vessel of the US database to send reminders to their customers for ensuring that the NVDC has up-to-date vessel documentation for vessel owners, to double check the accuracy of their customers' vessel documentation applications and replacement Certificates, to facilitate vessel documentation transfers, and ensure that their vessel owners have the appropriate special

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

licenses and endorsements.

Thus, the identified general public's interests are all related to the core purpose of the FOIA and the NVDC's performance of its statutory duty of reviewing and processing applications for federal vessel documentation.

## THE USCG IMPROPERLY INVOKED EXEMPTION 7(C) TO JUSTIFY ITS REDACTIONS

87.    Exemption 7(C) requires withholding of records or information compiled for law enforcement purposes, but only to the extent the production of such information "could be reasonably expected to constitute an unwarranted invasion of personal privacy." *5 U.S.C. § 552(b)(7)(C)*. If the document was "compiled for law enforcement purposes," courts must then balance the individual privacy interests against the public's interest in disclosure. *Wiener v. FBI*, 943 F.2d 972, 985 (9th Cir. 1991). This is the same balancing test analyzed in paragraphs 82 to 87 above.

88.    In addition, "[e]xemption 7(C) **recognizes the stigma of being associated with any law enforcement investigation** affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure." (emphasis added) See *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-75. There are no law enforcement investigations at issue.  As already mentioned above, there is no reason that disclosing the PII of recreational boat owners correspond to a "stigma of being associated with any law enforcement investigation.  Nevertheless, the USCG improperly contends that Exemption 7(c) applied in this situation because "the responsive documents are comprised of records compiled by an agency primary engaged in law enforcement carrying out its mandated function." (*Exhibit I*, at 2).

\\

\\

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## PII OF RECREATIONAL VESSEL OWNERS ARE COMPRISED OF RECORDS COMPILED BY THE NVDC, AN AGENCY ENGAGED IN ADMINISTRATIVE FUNCTIONS

89.     In regard to Exemption 7(c), the PII of recreational vessels owners was not compiled by an agency primarily engaged in law enforcement purposes – instead, the PII are compiled by an agency (NVDC) primarily engaged in administrative purposes through "reviewing and processing applications for federal vessel documentation to ensure compliance with vessel documentation requirements." (*Exhibit J*, at 6). Specifically, the NVDC is solely responsible for reviewing and processing applications for federal vessel documentation to ensure compliance with vessel documentation requirements. For example, the NVDC serves the "unique function as the entity responsible for federally documenting commercial and recreational vessels – annually processing hundreds of thousands of applications for vessel documentation." (*Exhibit J*, at 36).

90.     Instead, courts have upheld Exemption 7(c) when responsive documents come from agencies such as the Internal Service Revenue, U.S. Department of Navy, U.S. Attorney's Office, Federal Bureau of Investigation, Department of Justice, Department of Defense, and U.S. Attorney's Office:

- "It is well established that the IRS has the requisite law enforcement purpose to fall within the scope of FOIA Exemption 7(C)." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 13 (D.D.C. 2000).

- The US Marshals Service ("USMS") is considered to have a law enforcement purpose because the protection of the federal judiciary is the responsibility of the USMS, including being authorized to provide courtroom security for the federal judiciary. See *28 U.S.C. § 566(e)(1)(A)*. Accordingly, USMS materials containing names and initial of law enforcement officers and the register numbers of certain prisoners are considered compiled for law enforcement purposes as they are connected to the "receipt, processing, safekeeping, and

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

transportation" of prisoners while in the USMS' custody. See *Jimenez v. F.B.I.*, 938 F. Supp. 21, 29 (D.C. Cir. 1996)

- A district court case ruled that the USCG properly withheld the name of a government employee from a USCG Case Update Form under FOIA Exemption 7(c) (See *Kurdyukov v. United States Coast Guard*, 578 F. Supp. 2d 114, 128 (D.D.C. 2008) because FBI personnel "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." *Lesar v. United States Dep't of Justice*, 204 U.S. app. D.C. 200, 636 F.2d 472 487 (D.C. Cir. 1980).

91.     Accordingly, our case can be easily distinguished from precedent because the USCG is redacting the PII of recreational vessel owners and not that of government employees ("personnel").  In any event, the NVDC is certainly not an agency primarily engaged in law enforcement carrying out its mandated function.

92.     In addition, Exemption 7(c) also takes particular note of the strong interest of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity to avoid stigmatizing, embarrassing, or harming the individual.  As mentioned above already, the disclosure of PII for recreational vessel owners would  only associate the individuals as having registered a vessel with the NVDC, or owning a vessel. Accordingly, there is nothing that would be stigmatizing, embarrassing or dangerous to the recreational owners if the PII of recreational vessel owners was disclosed.

93.     Thus, it cannot be argued that the PII of recreational vessel owners was compiled for law enforcement purposes.  However, even if the PII of recreational vessel owners is considered to be compiled for law enforcement purposes, courts must then balance the individual privacy interests against the public's interest in disclosure.  For the reasons stated in detail throughout, recreational vessel owners

36

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

do not have "substantial privacy interests", and the publics' interest in disclosure greatly outweighs any privacy interests of recreational vessel owners.

## CLAIM

94.    Plaintiff asserts and incorporates by references all prior paragraphs.

95.    Plaintiff has a right of action under FOIA to the records it has requested, and there is no legal basis for the USCG's failure to disclose them.

96.    Defendant has violated the FOIA by improperly withholding and not producing the requested FOIA information.

97.    Plaintiff has exhausted all applicable administrative remedies with respect to its request for the requested records.

98.    Plaintiff is entitled to injunctive relief mandating the release and disclosure of the requested records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that the USCG's withholding of the requested records is a violation of the FOIA;

2. Order the USCG to immediately provide the Plaintiff with the records it has requested at no cost and without delay;

3. Grant the Plaintiff its costs of litigation, including reasonable attorney fees as provided by FOIA, 5 U.S.C. § 552(a)(4)(E); and

\\

\\

\\

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

4.  Provide such other relief as the Court deems just and proper.

Dated:  March 19, 2021                 **LEE, HONG, DEGERMAN, KANG & WAIMEY**


                                        By:  *David N. Makous*
                                            David N. Makous
                                            Patrick Lai
                                            Attorneys for Plaintiff
                                            Maritime Documentation Center Corp.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**