David N. Makous, SBN 82409

Fisher Broyles LLP

9350 Wilshire Blvd., No. 203

Beverly Hills, California 90212

310-974-3224 (tel)

310-974-3226 (fax)

David.makous@fisherbroyles.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARITIME DOCUMENTATION CENTER CORP., a Montana corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNITED STATES COAST GUARD,<br><br><br>                    Defendant. | Case No.: EDCV 21-00489 JWH (SPx)<br><br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**<br><br>**DATE: DECEMBER 17, 2021**<br>**TIME: 9 AM**<br>**PLACE: CTRM 2** |

1

# Table of Contents

A.  Plaintiff's Summary Position      p   4

B.  Brief Presentation of Plaintiff's Business and the Practices of USCG

    and the Prior Practices of the USCG      p   5

C.  Captain Neubauer's Declaration is Unqualified and Unfounded      p   13

D.  DEFICIENCIES IN THE NVDC OPERATION: GAO's

    DECEMBER 2020 REPORT TO CONGRESSIONAL

    COMMITTEES      p   15

E.  PRIVATE VESSEL DOCUMENTATION SERVICES      p   16

F.  Legal Authorities – Discussion      p   17

    STEP ONE: RECREATIONAL VESSEL OWNERS

    HAVE NO PRIVACY INTERESTS IN THEIR BOAT

    REGISTRATIONS      p   19

    STEP 2: THE PUBLIC INTEREST IN DISCLOSURE OF PII

    GREATLY OUTWEIGHS THE NON-EXISTENT

    OR DE MINIMIS PRIVACY CONCERN      p   20

    EXEMPTION 7(C) HAS NO RELEVANCE OR MERIT:

    THE INFORMATION FROM RECREATIONAL VESSEL

    OWNERS IS COMPRISED OF RECORDS COMPILED

    BY THE NVDC, AN AGENCY ENGAGED IN

    ADMINISTRATIVE FUNCTIONS      p   22

Plaintiff Memo PA MSJ

1

## Table of Authorities

2

**Statutes**

3

**5  U.S.C. 552 and (b)(6)and (b)(7)(C), passim**                    p.      17

4

5

**Cases**

6

**Multi Ag Media LLC v. Dep't of Agric.,** 879 F. 2d 873, 874 (D.C. Cir. 1989)    p.      18

7

**Judicial Watch v. U.S. Dep't of State,** 875 F. Supp. 2d, 37, 45 (D.D.C. 2012)    p.      18

8

**Nat'l Ass'n of Home Builders v. Norton,** 309 F. 3d 26, 32 (D.C. Cir. 2002)     p.      18

9

**Nat'l Ass'n of Retired Fed. Emps. v. Homer,** 879 F.2d 873, 877 (1989)     p.      19

10

**Wiener v. FBI,** 943 F.2d 972, 985 (9th Cir. 1991)                  p.      22

11

**Reporters Comm. for Freedom of the Press,** 489 U.S. at 773-75.         P.      22

12

**Heggestad v. U.S. Dep't of Justice,** 182 F. Supp. 2d 1, 13 (D.D.C. 2000).     P.      23

13

**Jimenez v. F.B.I.,** 938 F. Supp. 21, 29 (D.C. Cir. 1996).              P.      24

14

**Kurdyukov v. United States Coast Guard**, 578 F. Supp. 2d 114, 128

15

(D.D.C. 2008)                                        p.      24

16

**Lesar v. United States Dep't of Justice**, 636 F.2d 472 487 (D.C. Cir. 1980)    p.      24

17

18

19

20

21

22

23

24

25

26

27

28

3

A. **Plaintiff's Summary Position.**

Plaintiff MDCC opposes the Motion for Summary Judgment on multiple grounds with the accompanying Declaration of John Soria (with exhibits), Request for Judicial Notice (with exhibits), Objections to Defendant's Evidence, and the Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law.

1. There never was, nor now is, a "clear" privacy interest by boat owners in their recorded information to obtain and maintain vessel registrations. This is patently apparent in view of:

a. the decades long practice of widely publishing and revealing all of the registration information, including as required by governmental decrees;

b. the lack of expectation by the public at all times for any treatment of their information as private;

c. the non-existence of any notice by the USCG/NVDC to the registrants of any such privacy interest in the registration process;

d. the complete disclosures by USCG as recently as May 2021 of unredacted information;

e. the existence in 2017 of 100% fully disclosed identities of the registrants for all to see;

f. the existence now of a still substantial number of vessel registrants whose identity and personal information was previously disclosed and known;

g. the arbitrary decision and nature to make frequent disclosures to others around the country and world who are non-government, private, and non-profit entities;

h. the clear arbitrariness of this election to redact some info and not others;

i. the need of the public to know who owns what and where they are, just like a DMV

**Plaintiff Memo PA MSJ**

ledger of licensees, or the recordation of real estate ownership in the County Recorder.

2. USCG has not met its burden of proof that there is a "clearly unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(6), but makes the shallow assertion that the public still can see what the NVDC does (Neubauer, 37-3, 14-15), as if this is the sole reason for the NVDC reporting and registrations requirements..

3. Furthermore they offer no causative relationship between these arbitrary actions (redacting the name and addresses), and any interest they have in "law enforcement", as they have little and there is no causative relationship with the selective redactions, as found by the GAO.

4. There are vastly greater countervailing public interests and reasons to provide all of the information sought as had been done for decades.

5. Furthermore their primary witness Captain Neubauer is unqualified and his testimony is nearly worthless.

6. Plaintiff relies on the evidence provided in the accompanying Declaration of its owner and president John Soria, exhibits, and a dozen pieces of judicially noticeable content, primarily of the US Government itself.

7. Defendant has not met its burden.

A. **Brief Presentation of Plaintiff's Business and the Practices of USCG and the Prior Practices of the USCG**

1. Plaintiff Maritime Documentation Center Corp. is a Montana corporation ("MDCC") in good standing and registered to do business in California, with its principal place of business in Chino Hills, California. Since 2017, MDCC has operated through the domain name www.maritimedocumentation.us and provides vessel owners with an online website (or portal) for vessel owners to register, transfer, renew, and conduct other documentation services with the NVDC. (Dec. JS, Para. 2)

2. Vessel documentation is a national form of vessel registration that provides evidence of nationality for international travel and trade and allows vessels to engage in certain restricted trades such as coastwide trade and the fisheries. There is nothing inherently "private" about ownership of vessels operating on public waters. Vessel documentation is analogous to those required by the States' Department of Motor Vehicles regulating automobile registration and maintaining a public record of information about vehicle registration, driver licenses, occupational licenses, accessible widely, or a County Recorder's real estate deed recorded against a property, since ownership of a piece of land is a matter of public record. (Dec JS, para 3)

3. Thousands of vessel owners rely solely on Plaintiff's and their competitors' services to ensure accurate and up-to-date vessel registrations.  In 2020 alone, Plaintiff processed over 58,000 vessel documentations for their customers, which is the equivalent of perhaps 25% of the entire body of registered recreational and commercial owners processed by the NVDC as reported by the GAO.  (Dec. JS. Para. 4; See Doc No.1-10, Exhibit J to the Complaint,  at 7, the GAO report on the NVDC ("In fiscal year 2019, the NVDC documented about 230,000 vessels operating for commercial and recreational purposes in U.S. waters or the exclusive economic zone – an area extending 200 nautical miles out from the U.S. shoreline."))

4. Per Decl. JS, para. 8, all information contained in the Merchant Vessel Records were publicly available for decades. Specifically, the report is a data file of PII of merchant and recreational vessel documented under the laws of the United States by the USCG. The source of the data file is the USCG's Marine Information for Safety and Law Enforcement (MISLE) and VDS database, a comprehensive system serving many Coast Guard Marine safety units, including the NVDC.  For each vessel having a valid

**Plaintiff Memo PA MSJ**

Certificate of Documentation, the data file consists of vessel particulars and managing owner identification information.  Only until very recently, the report had previously listed all PII information included in the data of the report.  Until at least 1994, the United States government has published annual reports of the Merchant Vessels of the United States, which included the same unredacted PII data that was previously provided in the report database. (Doc 1-6, Exh F to the Complaint)

5. From 1994 to 2018, the Merchant Vessels of the United States data file was available for purchase by the public via a CD-ROM as a single issue or an ongoing subscription. In https://www.professionalmariner.com/merchant-vessels-of-the-united-states-data-on-cd/ fact.  This is an official publication of the US government, NOAA, where it states that once the information is published it is no longer protected by the FOIA or Privacy Acts with a statement of the reasons for doing so.

https://www.st.nmfs.noaa.gov/st1/CoastGuard/VesselDataCaveats.html (See Doc. 1-6, *Exhibit F to the Complaint*);

    i.   This clearly states that the list should be published. [**We have bolded the key language in it**]:

        **"The United States Code for vessel documentation is cited (below) and is followed by the rationale for publishing these data.**

        *46 U.S.C. 12119. List of documented vessels. The Secretary of Transportation shall publish periodically a list of all documented vessels and information about those vessels that the Secretary considers pertinent or useful. The list shall contain a notation clearly indicating all vessels classed by the American Bureau of Shipping.*

**Plaintiff Memo PA MSJ**

The above law requires the Coast Guard to periodically publish a list of all documented vessels <u>and information</u> <u>about those vessels</u>. To meet this requirement, a determination was made by the Secretary of Transportation as to what information should be published about these vessels. **That determination included the name and address of the vessel owner as information that should be published about these vessels.** That information has always been included in CG-408 Merchant Vessels of the United States, which was last published in 1994. It is now published via CD-ROM and distributed to the public by the National Technical Information Service. **Once such information is published and made available to the public, it is no longer protected under either the Freedom of Information Act or Privacy Act. Thus would be appropriate for inclusion on an Internet site**.

**There are a number of reasons for publishing the name and address of vessel owners. Those reasons include:**

- **Documentation is a public process**
- **To make it more difficult for ineligible persons to document vessels (i.e., someone who does not meet U.S.**
- **citizenship requirements)**
- **To deter theft and trade in stolen vessels."**

6. Since at least 2002, the National Oceanic and Atmospheric Administration (NOAA) Office of Science & Technology had also provided a searchable USCG vessel database query to the public that retrieves vessel dimensions, tonnage, build (if available), and ownership information including PII from data contained in the Merchant Vessels of the US.  (Doc. 1-16, Exh. P, Complaint).

8

7. Also verifying this is a publication called The Professional Mariner, Journal of the Maritime Industry, Merchant Vessels of the United States Data on CD, June 20, 2007, from a website located at https://www.professionalmariner.com/merchant-vessels-of-the-united-states-data-on-cd/ wherein it discusses the complete availability of the Merchant Vessel registrants.

8. Plaintiff itself also obtained the unredacted list several times:

    a. In 2017 [month uncertain] they purchased from NOAA (US government - National Oceanic and Atmospheric Association, who maintains the Merchant Vessel complete list)  the entire CD-ROM of the registry of The Merchant Vessels of the United States – with no redactions or blocks. [Dec. JS, para.9]

    b. As per Decl JS, para. 9, on May 24, 2021 they downloaded a complete unredacted list from this active USCG website from this source of USCG: https://www.dco.uscg.mil/OurOrganization/AssistantCommandantforPreventionPolicy%28CG-5P%29/InspectionsCompliance%28CG-5PC%29/OfficeofInvestigationsCasualtyAnalysis/MerchantVesselsoftheUnitedStates.aspx ).  NO FIELDS WERE REDACTED in the download obtained from this site of the USCG.

9. Attached to the Declaration of JS as Exhibit A is a small sampling of this downloaded unredacted list, (which we redacted to file per CDCal order). The full massive listing of 380,000 registrants, unredacted, can be filed, it if the Court desires.

10. It is arbitraryfor the USCG  to "decide" *ad hoc* which registrant is to be redacted while allowing corporate names and trust names and addresses, often home addresses with personal names attached, to be disclosed. (Dec. JS, para.10.)  This apparently was done at some unreported *ad hoc* review of the data and "making a call" on who and what fit this

arbitrary profiling (there is no mention of it in the Neubauer, 37-3 Declaration). Even then, they still released ample disclosures of personal names and addresses (which could coincide with home addresses) for many of the unredacted owners.

11. Soria estimates based on his experience in this industry that **virtually 100%** of the 2017 recreational vessel owners and owned vessels had their personal names and addresses already published before the arbitrary redactions by USCG allegedly occurred in June 2017 which of course is forever in the public domain. This results in unequal treatment in a sense of some who are already revealed and some who are not. (Dec. JS, para.11)

12. Soria also estimates that as of today a substantial number, maybe over half, of the vessels and vessel owners had registrations and records of their names and addresses published before June 2017. (Dec. JS para. 12).

13. Nowhere, ever, on the USCG website, nor in the NVDC documentation, whether before or after 2017, has the NVDC/USCG stated to the vessel owners that their "personal names and addresses" would not be disclosed, or would not be publicly available. Soria also is unaware of ANY regulation promulgated by the USCG before or after 2017 providing a warranty of privacy to anyone in respect to their publicly registered vessels. (Dec. JS, para. 13)

14. This is borne out by the absence of any such language on all of the registration related NVDC materials:

    a. https://www.uscg.mil/Disclaim, which presents its Web Site Privacy & Security Policy. No assurance or warranty of any kind is made by the USCG to the vessel owners.

    b. https://www.dco.uscg.mil/Portals/9/DCO%20Documents/NVDC/CG-1280_Renewal_of_Certificate_Of_Documentation.pdf?ver=WPHaCWFat5gjwLZ

4nFiplA%3d%3d, which is the NVDC application for renewal of a registration.
In pertinent part it provides:

    i.  "COMPLETING THE CG-1280: 1. If the CG-1280 was mailed to you,
sign, date and indicate Capacity of Person signing. Enter change of
address information, if applicable. 2. If you obtained a blank, fillable form
from our website, insert name and address in upper left corner of form to
the left of the NVDC return address. Enter change of address information
below, if applicable. Sign, date, indicate Capacity of Person signing AND
enter Vessel Name and Official Number in block titled VESSEL NAME
AND OFFICIAL #. 3. Recreational vessel owners ONLY may choose to
renew for a period of 1-5 years as per the above NOTICE. NOTE: Contact
the National Vessel Documentation Center at (800) 799-8362 or (304)
271-2400 Eastern Standard Time to make any change other than address.
Mail completed form and payment to the address listed above, or e-mail to
VDC-PF-NVDCRENEWALS@USCG.MIL. AN AGENCY MAY NOT
CONDUCT OR SPONSOR AND A PERSON IS NOT REQUIRED TO
RESPOND TO A COLLECTION OF INFORMATION UNLESS IT
DISPLAYS A VALID OMB CONTROL NUMBER. THE COAST
GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS
FORM IS 5 MINUTES. YOU MAY SUBMIT ANY COMMENTS
CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR
ANY SUGGESTIONS FOR REDUCING THE BURDEN TO: U.S.
COAST GUARD, NATIONAL VESSEL DOCUMENTATION

CENTER, 792 T J JACKSON DRIVE, FALLING WATERS, WEST VIRGINIA 25419 OR OFFICE OF MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (1625-0027), WASHINGTON, DC 20593. PLEASE INDICATE ADDRESS CHANGE BELOW. (A PHYSICAL ADDRESS IS REQUIRED WHEN USING A POST OFFICE BOX.)". No assurance or warranty of any kind is made by the USCG to the vessel owners:

    c.   The main site for the NVDC is located at:

        i.   https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-Prevention-Policy-CG-5P/Inspections-Compliance-CG-5PC-/National-Vessel-Documentation-Center/National-Vessel-Documentation-Center-Instructions-and-Forms/.  No assurance or warranty of any kind is made by the USCG to the vessel owners.

[Dec. JS, para. 14]

15. On a related point, nowhere at any time before or after 2017 has the USCG advised the registered vessel owners that it will share, or not share, personal information of registered owners with other entities. However strangely, after all of the USCG efforts, Capt. Neubauer Declaration (Doc. 37-3, para. 16) admits that the USCG does so and shares vessel owner information with multiple entities around the US and the world, including non-governmental, private, and non-profit entities, specified as:

    a.   Lloyds Register: https://en.wikipedia.org/wiki/Lloyd's_Register. It is reported to be a UK based private maritime and business service organisation owned by a UK charity.  Lloyds states that this: "allow persons involved in maritime transport to

be better informed about the performance of ships and maritime organisations with which they are dealing." It is unknown how long the USCG has been providing registrant personal information to them.

b. <u>EQUASIS</u>: is a Paris, France based online data base which helps to promote exchange of information in the shipping industry. See http://www.equasis.org/EquasisWeb/public/About.  It is unknown how long the USCG has been providing egistrant personal information to them.

c. <u>MMSI</u>: See https://www.navcen.uscg.gov/index.php?pageName=mtMmsi.  In this USCG publication it states: "MMSIs are regulated and managed internationally by the International Telecommunications Union in Geneva, Switzerland, just as radio call signs are regulated. The MMSI format and use is documented in Article 19 of the ITU Radio Regulations and ITU-R Recommendation M.585-6, available from the ITU."

d. <u>Unidentified</u> state agencies – USCG has failed to make known to the Court the purpose, scope or nature of the disclosures, or any pertinent protection of privacy interests.

[Dec. JS, Para.15]

**B.    Captain Neubauer's Declaration is Unqualified and Unfounded**

16. The USCG has offered the Declaration of Captain Jason Neubauer (Doc. 37-3) a relatively low ranking officer in the USCG in support of their claim.  He is identified as the Director of the Coast Guard Office of Investigations and Casualty Analysis, <u>having NO identified responsibility or familiarity with the operations of the NVDC.</u>  His Office of Investigations has nothing to do with the NVDC, as disclosed and viewable at their own website at https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-

Prevention-Policy-CG-5P/Inspections-Compliance-CG-5PC-/cginv/Office-of-Investigations-Casualty-Analysis-Copy/, where this Office self-identifies its day-to-day processes, as:

    i.   "Manage marine casualty and pollution investigation programs.

    ii.   Manage pollution notice of violation program.

    iii.   Manage violation investigations; adjudicated by Hearing Officer.

    iv.   Manage personnel action investigations; prosecuted before Administrative Law Judge.

    v.   Conduct administrative clemency boards.

    vi.   Manage drug and alcohol testing program.

    vii.   Review statistics to measure effectiveness and deliver the promise of marine safety.

    viii.   Support field in all of the above policy issues."

[Dec. JS, 16-17]

17. The sole excuse offered by the USCG (in Neubauer's Declaration, Doc. 37-3) for the redaction is one sentence, that the redaction "does not hinder the public's ability to understand the operation of the NVDC" (Neubauer, 37-3, para. 14), as if this is the sole purpose of the NVDC Merchant Vessel Records and disclosures? This is a shallow, prevaricated and imagined excuse.

18. At Neubauer, 37-3, para. 16, this Declarant - lacking all personal knowledge, and providing no particulars- sets out an *ad hominem* streaming tirade against the  private vessel registration industry, broadly alleging unidentified and unfounded allegations of consumer confusion and complaints, investigations without a conclusion, and simply a widespread smear (37-3, Para. 16).  This should be stricken.

19. Putting it simply Capt. Neubauer has not presented sufficient personal knowledge to qualify to offer any facts or opinions about the operation and practices and policies of the NVDC, and offered no admissible evidence on the same, and his testimony should be excluded.

## C.    DEFICIENCIES IN THE NVDC OPERATION: GAO's DECEMBER 2020 REPORT TO CONGRESSIONAL COMMITTEES

20. In December 2020, the GAO published a report titled **"Actions Needed to Improve National Vessel Documentation Center Operations,"** a copy of which is attached as Doc. No. 1-10, Exhibit J to the Complaint.  The report examined, among other objectives, whether the USCG met its NVDC workload demands and measured NVDC's effectiveness in processing vessel documentation by "analyz[ing] data from the NVDC's weekly case processing reports for fiscal years 2015 through 2019, which included the NVDC's time frames for processing recreational certificates of documentation." (See Doc. 1-10, Exhibit J, at 9).  The GAO report found that the NVDC met workload demands for timely processing of commercial vessel documentation, but not for recreational vessel documentation. (See 1-10, Exhibit J, at 8).  From January 2015 through September 2019, the NVDC's recreational documentation processing time averaged 57 days – about 4 times longer than its 15-day informal target. (See 1-10, Exhibit J, at 3). Specifically, the GAO found that the NVDC experienced a backlog for processing applications for certificates as long as 4 months for processing applications for recreational certificates from fiscal years 2007 to 2017.  (See 1-10,  Exhibit J, at 8)  During this time, the range of time applications stayed in NVDC's queue increased from about 3 to 48 business days in fiscal years 2007 to about 40 to 80 business days in fiscal year 2017. (See 1-10, Exhibit J, at 20).

21. The service by NVDC was generally horrid, resulting in an inept governmental agency

creating additional and unnecessary challenge to the public with this inefficient process. (Dec. JS, 22-31, 1-10, Exhibit J, entire).

**D.** **PRIVATE VESSEL DOCUMENTATION SERVICES**

22. Accordingly, it is useful to the public and valuable for the vessel documentation companies, such as MDCC, to facilitate and advise vessel owners about obtaining and renewing registrations to avoid invalid registrations, non-compliance with legal requirements, unnecessary delay, and extra fees. Plaintiff offers considerable experience and expertise in answering questions about the entire vessel documentation process, with thousands of satisfied customers who rely on tour services for registration and renewal. (Dec. JS, para 32-34)

23. The notices sent by private service companies like Plaintiff to vessel owners keeps owners in compliance, avoids criminal sanctions, loss of boating rights and more. Plaintiff and its competitors and others provide a service to recreational vessel owners, commercial vessel owners, prospective vessel owners, boat dealers, boat mechanics, marine lenders, and maritime vendors and services (Dec. JS, 33-38,42)

24. The lack of access to the registrant information hampers and injures many categories of persons and companies. (Dec. JS, para. 43)

**E.** **Legal Authorities - Discussion**

A. Pursuant to 5 USC 552(a)(2): "Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of

16

the public;

(D) copies of all records, regardless of form or format—

(i)that have been released to any person under paragraph (3); and

(ii) (I)that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or

(II)that have been requested 3 or more times; and

(E )a general index of the records referred to under subparagraph (D);

….

"[T]o the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published…" (emphasis added).

B.  The USCG pursuant to Title 5 U.S.C. § 552(b)(6) and (b)(7)(C) is withholding the information on some 73% of the registrants while providing it on the remaining 27%. To do so, they are equating "personnel and medical" with boat owner registrants – a tenuous stretch. Further as amply demonstrated there is no "clearly unwarranted" invasion of personal privacy, and the balancing test favors the ample public interests over the minimal or largely non-existent privacy interests.

C.  Exemption 7(C) protects records or information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C), and takes particular note of the strong interest of individuals, whether they are suspects, witnesses, or investigators, in not being

17

unwarrantably associated with alleged criminal activity to avoid stigmatizing, embarrassing or harming the individual. None of this is present in this case.

D.  The primary battleground here is privacy. "Personnel files" relates to agency employees or military or private employment employee's files, and they are clearly not "medical files", and they do not appear to be "similar" to either of these.  To uphold either way the court first asks "whether disclosure of the files 'would compromise a substantial, as opposed to de minimis, privacy interest," because '[i]f no significant privacy interest is implicated. . . FOIA demands disclosure." Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1229 (quoting Nat'l Ass'n of Retired Fed. Employees v. Horner (NARFE), 879 F. 2d 873, 874 (D.C. Cir. 1989).

E.  We contend there is no substantial privacy interest at all in view of the nature of the registrations themselves and the long-standing self-evident treatment as public information by all of the governmental agencies.  Even so, the balancing test favors disclosure.  Judicial Watch v. U.S. Dep't of State, 875 F. Supp. 2d, 37, 45 (D.D.C. 2012), and **Exemption 6 "instructs the court to tilt the balance in favor of disclosure."** See Nat'l Ass'n of Home Builders v. Norton, 309 F. 3d 26, 32 (D.C. Cir. 2002) ("[U]nder Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the [FOIA]" (quoting Wash. Post Co. v. U.S. Dep't of Health and Human Servc., 690 F.2d 252, 261, 223 U.S. App. D.C. 139 (D.C. Cir. 1982)).

## STEP ONE: RECREATIONAL VESSEL OWNERS HAVE NO PRIVACY INTERESTS IN THEIR BOAT REGISTRATIONS

F.  At least one district court has recognized that "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed" and "whether it is

a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." <u>Nat'l Ass'n of Retired Fed. Emps. v. Homer, 2</u>79 U.S. App. D.C., 879 F.2d 873, 877 (1989). Here, the recreational vessel owners would merely be identified as having registered a vessel with the NVDC, or owning a vessel. There is nothing at issue that would be stigmatizing, embarrassing or dangerous if the PII of recreational vessel owner was revealed, as it has been for decades. Certainly Neubauer has not offered any admissible evidence to refute this, while Plaintiff's have provided a mountain of reasons to disclose.

G. <u>In addition, recreational vessel owners have no expectation of privacy regarding their PII because the recreational vessel owners were never expressly or impliedly promised confidentiality or privacy when submitting their names and address (e.g., PII) to the NVDC for use in a business process (e.g., vessel registration, application for inspection, etc.).</u>

H. As explained in detail above, the PII were historically published and routinely available to any member of the public since – well - forever.

I. The PII of any recreational vessel owners who registered with the NVDC prior to 2017 has already been released to the public so there can be no expectation of privacy for any recreational vessel owners who existed prior to 2017. Yet their treatment is uneven vis-à-vis those who purchased boats for the first time after 2017.

J. Additionally, corporations and family trusts and recreational vessel owners all fill out the same vessel documentation forms and applications and the names and addresses of vessels owned by corporations and family trusts are not redacted, which contain many names and addresses of persons (e.g. The Bill Smith Family Trust).

K. Finally, the USCG has also released the PII to the Plaintiff itself without redactions, and admittedly to other organizations and databases - without any restraint or restrictions -

including at least the Lloyds Register, State Boat Registration systems/database, Maritime Mobile Service Identity (MMSI) database, EQUASIS, Merchant Mariner Licensing .

**STEP 2: THE PUBLIC INTEREST IN DISCLOSURE OF PII GREATLY OUTWEIGHS THE NON-EXISTENT OR DE MINIMIS PRIVACY CONCERN**

L. Even if any privacy interest in the PII of recreational owners exists, then the court applies a balancing test that weighs the privacy interest in withholding the record against the public's interest in the record's disclosure.

M. As an initial matter, disclosure of the PII of recreational vessel owners is related to the core purpose of the FOIA because it sheds additional light on the NVDC's operations by allowing vessel documentation companies and others in the maritime industry, including vessel owners  to research PII to help them correctly and efficiently effectuate registration, renewals, and transfers of vessels.  Many groups and persons have some need and aspect of interest in this information. As mentioned in detail above, the NVDC is responsible for reviewing and processing applications for federal vessel documentation to ensure compliance with vessel documentation requirements.  Specifically, the NVDC serves the "unique function as the entity responsible for federally documenting commercial and recreational vessels – annually processing hundreds of thousands of applications for vessel documentation." (1-10. Exhibit J).  Accordingly, disclosure of PII of recreational vessel owners furthers the NVDC's goal and the public's interest in timely and accurately reviewing and processing applications for federal vessel documentation, ensuring compliance with vessel documentation requirements, tracking vessel information accurately, and maintaining correct and accurate vessel documentation in the Merchant Vessels of the US.

N. The disclosure of PII is also related to the NVDC's performance of its statutory duties since

vessel documentation is a public process.  The two primary functions of the NVDC are to review and process applications for federal vessel documentation to ensure compliance with vessel documentation requirements and publish a list of all documented vessels and information about those vessels, including the name and address of the person to whom inquiries regarding the vessel may be made.   Accordingly, the disclosure of the PII to the public is related to the NVDC's performance of these statutory duties because disclosure of PII enables vessel research through access to the fully unredacted information via various databases.   This allows the public and documentation companies to help commercial and recreational vessels fill out correct and accurate vessel documentation forms, which will make the NVDC's review process more efficient and help alleviate the massive backlog.  In addition, recreational owners can use the documentation companies to prepare, advise and answer questions about filling out the forms, which works to everyone's advantage.  Furthermore, releasing the PII to the general public will help deter theft and trade in stolen vessels by allowing the general public and maritime services and vendors to verify vessel ownership information.

O. Finally, the USCG's disclosure of the PII of recreational vessel owners serve the public interest because there is a clear relationship between disclosure of PII for recreational vessel owners and the general public's interest to monitor and more efficiently facilitate vessel registration with the NVDC.   The NOAA Fisheries, Office of Science and Technology website, has stated that the names and addresses of vessel owners: "would be appropriate for inclusion on an Internet site. There are a number of reasons for publishing the name and address of vessel owners. Those reasons include:

- Documentation is a public process;
- To make it more difficult for ineligible persons to document vessels

(i.e., someone who does not meet U.S. citizenship requirements)

- To deter theft and trade in stolen vessels (1-6, Exhibit F, at 1)."

P. Thus, the vastly diverse identified and many groups that comprise the "general public" has a much greater collective interest in access and disclosure.

**EXEMPTION 7(C) HAS NO RELEVANCE OR MERIT: THE INFORMATION FROM RECREATIONAL VESSEL OWNERS IS COMPRISED OF RECORDS COMPILED BY THE NVDC, AN AGENCY ENGAGED IN ADMINISTRATIVE FUNCTIONS**

Q. Exemption 7(C) requires withholding of records or information compiled <u>for law enforcement purposes,</u> but only to the extent the production of such information "could be reasonably expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). If the document was "compiled for law enforcement purposes," courts must then balance the individual privacy interests against the public's interest in disclosure. <u>Wiener v. FBI</u>, 943 F.2d 972, 985 (9th Cir. 1991). This is the same balancing test analyzed above.

R. In addition, "[e]xemption 7(C) recognizes the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure." See <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 773-75.

S. As the GAO reported: "The NVDC's mission is to facilitate maritime commerce and the availability of financing for vessels while protecting the economic well- being of U.S. citizens. *The primary functions of the NVDC are to manage U.S. vessel documentation and, upon request, provide third parties, such as lenders, with notice of any existing mortgages and liens on federally documented vessels.* NVDC management officials told us the NVDC may also conduct investigations of possible violations of vessel documentation

22

requirements. They said the NVDC would conduct an investigation upon request by the Coast Guard Office of Inspections and Compliance and *had last completed an investigation in 2011.*" (1-10, at 12). (Emphasis added).

T. So that about kills any notion that they are collecting data for "law enforcement purposes". Nevertheless, the USCG improperly contends that Exemption 7(c) applies in this situation because "the responsive documents are comprised of records compiled by an agency primary engaged in law enforcement carrying out its mandated function." Furthermore the arbitrary treatment by the NVDC of the information counsels strongly against any "law enforcement" interest:

    a. Variation in the categories of owners redacted as mentioned, and

    b. the uneven application of it to those who are already disclosed and those who have not yet been disclosed.

U. As already mentioned above, there is no reason that disclosing the PII of recreational boat owners creates a "stigma of being associated with any law enforcement investigation."

V. Finally Courts have upheld Exemption 7(c) when responsive documents come from agencies such as the Internal Service Revenue, U.S. Department of Navy, U.S. Attorney's Office, Federal Bureau of Investigation, Department of Justice, Department of Defense, and U.S. Attorney's Office. Consider the following precedent as informative:

    i. "It is well established that the IRS has the requisite law enforcement purpose to fall within the scope of FOIA Exemption 7(C)." <u>Heggestad v. U.S. Dep't of Justice</u>, 182 F. Supp. 2d 1, 13 (D.D.C. 2000).

    ii. The US Marshals Service ("USMS") is considered to have a law enforcement purpose because the protection of the federal judiciary is the responsibility of the USMS, including being authorized to provide courtroom security for the federal judiciary. See 28 U.S.C. § 566(e)(1)(A).

23

Accordingly, USMS materials containing names and initials of law enforcement officers and the register numbers of certain prisoners are considered compiled for law enforcement purposes as they are connected to the "receipt, processing, safekeeping, and transportation" of prisoners while in the USMS' custody. See Jimenez v. F.B.I., 938 F. Supp. 21, 29 (D.C. Cir. 1996).

   iii.  The USCG properly withheld the name of a FBI government employee from a USCG Case Update Form under FOIA Exemption 7(c) (See Kurdyukov v. United States Coast Guard, 578 F. Supp. 2d 114, 128 (D.D.C. 2008) because FBI personnel "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." Lesar v. United States Dep't of Justice, 204 U.S. app. D.C. 200, 636 F.2d 472 487 (D.C. Cir. 1980).

W. Accordingly, our case can be easily distinguished from precedent because the USCG is redacting the PII of recreational vessel owners and not that of government employees ("personnel"). In any event, the NVDC is certainly not an agency primarily engaged in law enforcement having done no such thing for 10 years. Thus, it cannot be argued that the PII of recreational vessel owners was compiled for law enforcement purposes.

For the foregoing reasons, Plaintiff asks that the summary judgment in favor of the USCG be denied.

Date: November 5, 2021     /David N. Makous/

                                     Counsel for Plaintiff

**Plaintiff Memo PA MSJ**